FILED
2024 Sep-09 AM 08:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

MICHAEL E. THORN,

Plaintiff,

vs.

BUFFALO ROCK COMPANY and BLUE CROSS AND BLUE SHIELD OF ALABAMA,

Defendants.

Case No. 3:24-cv-00588-HNJ

## MEMORANDUM OPINION

This case proceeds before the court on Plaintiff Michael Thorn's motion to remand this case to state court. (Doc. 9). As discussed herein, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461. (ERISA), preempts Thorn's claim for a declaratory judgment. Accordingly, the court will deny Thorn's motion to remand the entire case. However, because this court cannot assert subject matter jurisdiction over Thorn's workers' compensation claim, the court will sever that claim and remand it to the state court pursuant to 28 U.S.C. § 1441(c)(2).

## PROCEDURAL BACKGROUND

Thorn filed this case on December 31, 2020, in the Circuit Court of Lauderdale County, Alabama, asserting a claim for workers' compensation benefits against Buffalo Rock Company (Buffalo Rock), his employer. (Doc. 1-5, at 279-81). On April 6, 2024,

Thorn filed an Amended Complaint in state court, reasserting his workers' compensation claim against Buffalo Rock and adding a claim for declaratory judgment against a new Defendant, Blue Cross and Blue Shield of Alabama (Blue Cross). (*Id.* at 294-97).

In the declaratory judgment claim, Thorn contends Blue Cross wrongly asserted a $20,645.88 subrogation and/or reimbursement interest vis-à-vis the December 30, 2019, injury underlying Thorn's workers' compensation claim. (*Id.* at 295-96, ¶ 10).[1] According to Thorn, Blue Cross's subrogation/reimbursement interest concerns medical expenses arising from a separate injury to his neck, not from the workplace injury. (*Id.* at 296, ¶ 13). Thorn thus remains "in doubt as to what Worker's Compensation benefits are due to" him, and he requests issuance of a declaratory

[1] Though Thorn refers only to Blue Cross asserting a subrogation interest, Blue Cross's communications with Thorn use the term "subrogation/reimbursement interest." (Doc. 1-5, at 302). The court will use the alternative terminology Blue Cross used. In any event, choice of phrasing does not ultimately control the disposition of Thorn's motion to remand. As discussed herein, the applicable Plan language grants Blue Cross the rights to both subrogation and reimbursement. *See UnitedHealth Grp. Emp. Health Benefit Plan v. Dowdy*, No. 8:06-CV-2111-T-23EAJ, 2007 WL 9723902, at *1 (M.D. Fla. Feb. 5, 2007) ("[D]efendant urges dismissal of the amended complaint because the plaintiff 'confuses its alleged right of reimbursement with the plan language that only provides a right of subrogation' . . . . However, the plan document . . . speaks of both 'subrogation and reimbursement' (perhaps the former in a legal sense for the lawyer and the latter in an ordinary sense for the layperson)' . . . . Inclusion in a complaint of a term employed by the plan hardly disables a plaintiff from stating a cognizable claim."); *Shaffer v. Rawlings Co.*, No. 3:09 CV 1578, 2009 WL 10679443, at *2 n.2 (N.D. Ohio Dec. 2, 2009), *aff'd*, 424 F. App'x 422 (6th Cir. 2011) (acknowledging distinction between the concepts of subrogation and reimbursement but nonetheless concluding "that the choice of label does not affect [the court's] legal conclusions"); *Rudel v. Hawaii Mgmt. All. Ass'n*, No. CV 15-00539 JMS-RLP, 2017 WL 4969331, at *3 n.5 (D. Haw. Oct. 31, 2017), *aff'd sub nom. Rudel v. Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262 (9th Cir. 2019) ("[F]or present purposes, the court uses the terms 'reimbursement' and 'subrogation' synonymously.").

judgment adjudicating the rights of the parties. (*Id.* at 296-97, ¶¶ 16-17).[2]

Thorn served Blue Cross with a Summons and a copy of the First Amended Complaint on April 9, 2024 (*Id.* at 318-21), and Blue Cross removed the case to this court on May 9, 2024. (Doc. 1). Blue Cross asserts ERISA preempts Thorn's state-law declaratory judgment claim because Blue Cross provides health care benefits for Buffalo Rock employees under the terms of Buffalo Rock's employee health benefit plan (the Plan). (*Id.* ¶¶ 7-15; Docs. 1-6 & 1-7). Buffalo Rock serves as the plan administrator, and Blue Cross serves as the claims administrator. (Doc. 1-6, at 2-3, ¶ 4).

As Thorn's Amended Complaint also asserts a non-removable workers' compensation claim against Buffalo Rock, Blue Cross requested severance of the workers' compensation claim for remand back to the state court pursuant to 28 U.S.C. § 1441(c)(2). (*Id.* at 297, ¶ 17). Section 1441(c)(2) provides:

> Upon removal of [a case involving both removable and non-removable claims], the district court shall sever from the action all [non-removable claims] and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a [removable claim] has been asserted are required to join in or consent to the removal . . . .

Though the statute does not require Buffalo Rock's consent to removal, Buffalo Rock consented, "provided that the Court will sever the workers' compensation claim and

[2] Naturally, Thorn's declaratory judgment claim proceeded under the Alabama Declaratory Judgment Act. *See* Ala. Code § 6-6-222 ("Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.").

remand the severed claim to the Circuit Court of Lauderdale County from which this action was removed, in accordance with section 1441(c)(2)." (Doc. 1, at 7 n.1).

On May 21, 2024, this court ordered Thorn to show cause why it should not sever the workers' compensation claim and remand it to the state court. (Doc. 5). On May 23, 2024, Thorn filed a response to the show cause order and a motion to remand the entire case to state court. (Doc. 9). Thorn does not object to remand of the workers' compensation claim, as the removal statute clearly prohibits the removal of such claims. *See* 28 U.S.C. § 1445(c) ("A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."). However, Thorn objects to Blue Cross's request to sever the workers' compensation claim, denies that ERISA preempts his new claim for a declaratory judgment, and contends the court should remand the entire case to the state court.

**DISCUSSION**

"'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alteration in original). The court must construe the removal statutes strictly, and it must resolve "all doubts about jurisdiction . . . in favor of remand to state court." *Mack,* 994 F.3d at 1359 (citations omitted). The party asserting federal

jurisdiction (here, Blue Cross) bears the burden of establishing jurisdiction. *See Word v. U.S. Commodity Futures Trading Comm'n*, 924 F.3d 1363, 1366-67 (11th Cir. 2019) (quoting *Kokkonen*, 511 U.S. at 377) ("'It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'"); *Bowling v. U.S. Bank Nat'l Ass'n, As Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2007-SP2*, 963 F.3d 1030, 1034 (11th Cir. 2020) (citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009)) ("On a motion to remand, the removing party shoulders the burden of establishing federal subject-matter jurisdiction.").

The Alabama Declaratory Judgment Act (ADJA) constitutes solely a remedial provision. Ala. Code § 6-6-221. Therefore, the court applies the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202., rather than the ADJA, in a removed action seeking declaratory relief. *See Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th Cir. 1989) ("At the outset we note that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts . . . . Thus the operation of the Declaratory Judgement Act is procedural only.") (citation omitted); *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) (*per curiam*) ("Because the Florida Declaratory Judgment Act is procedural as opposed to substantive, the district court did not err in construing the Coccaros' cause of action as a claim for declaratory and injunctive relief brought under 28 U.S.C. § 2201 exclusively.").

"A declaratory judgment action must satisfy the well-pleaded complaint rule and show that the 'displaced coercive action' – the declaratory judgment defendant's coercive action being displaced by the declaratory judgment suit – is created by federal law or necessarily depends on resolution of a substantial, disputed question of federal law." *City of Huntsville v. City of Madison*, 24 F.3d 169, 172 (11th Cir. 1994) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,* 463 U.S. 1, 8-18 & n.19 (1983)) (footnote omitted). *See also Franchise Tax Bd.*, 463 U.S. at 18 (holding federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when federal question is presented by a complaint for a state declaratory judgment, and where, if plaintiff had sought federal declaratory judgment, federal jurisdiction would be lacking if the federal claim would arise only as a defense to a state-created action); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) (citing *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) (noting that the federal DJA "does not enlarge the jurisdiction of the federal courts but rather is operative only in respect to controversies which are such in the constitutional sense. . . ." (internal quotation marks omitted))). Thus, "[w]hether federal question jurisdiction may be exercised over [Thorn's] action . . . turns in part on what cause of action [his] declaratory judgment complaint has displaced." *City of Huntsville*, 24 F.3d at 172.

As Thorn seeks a declaration that Blue Cross wrongfully asserted a subrogation/reimbursement interest, his declaratory judgment action displaces a

potential claim by Blue Cross for subrogation and/or reimbursement under the terms of the Plan. If ERISA governs that action, this court will possess subject matter jurisdiction over the claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

ERISA may govern a claim even if the party does not explicitly evoke it, as the statute

> "has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Conn. State,* 591 F.3d at 1344 (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)). Thus, even though pled as state common law claims, if [a plaintiff's] "causes of action [are] within the scope of the civil enforcement provisions of § 502(a)[,] [they are] removable to federal court." *Taylor,* 481 U.S. at 66, 107 S. Ct. 1542.

*Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1337 (11th Cir. 2015) (final three alterations in original).

ERISA completely preempts a state law claim if "'the plaintiff could have brought its claim under § 502(a),'" and "'no other legal duty supports the plaintiff's claim.'" *Id.* (citing *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004); *Conn. State,* 591 F.3d at 1345).

## I. Blue Cross Could Have Brought a Coercive Action Under ERISA § 502

A plaintiff could have filed a claim under ERISA § 502 if "(1) the plaintiff's claim

[falls] within the scope of ERISA; and (2) the plaintiff [has] standing to sue under ERISA." *Conn. State*, 591 F.3d at 1350 (citing *Davila,* 542 U.S. at 211-12; *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947-49 (9th Cir. 2009)). Both elements persist in this case as to Blue Cross's displaced coercive action.

**A. Blue Cross Would Have "Standing" to Sue Under ERISA**

The "standing" requirement refers to "statutory standing," which basically assesses whether a "plaintiff has the right to make a claim under section 502(a)." *Gables Ins. Recovery*, 813 F.3d at 1338 (citing *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004)).

Section 502(a) of ERISA permits a "participant, beneficiary, or fiduciary" to lodge a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Thus, if Blue Cross constitutes a "fiduciary" under the ERISA definition, it would possess standing to assert its displaced coercive action for subrogation/reimbursement.

Thorn argues Blue Cross did not act as an ERISA "fiduciary" when it asserted a subrogation/reimbursement interest for Thorn's neck-related medical expenses. (Doc. 9 ¶ 15 ("The action of Defendant's Subrogation Department and Subrogation/

Employee does not evidence a 'Fiduciary.' Thus, no ERISA herein.")). That argument bears no merit.

Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Plan grants Blue Cross "the discretionary responsibility and authority to determine claims under the plan, to construe, interpret, and administer the plan, and to perform every other act necessary or appropriate in connection with [the] provision of benefits and/or administrative services under the plan." (Doc. 1-6, at 60). The foregoing language granted Blue Cross the discretionary authority to determine a participant's entitlement to health benefits under the Plan, and thus, it rendered Blue Cross an ERISA fiduciary pursuant to § 1002(21)(A). *See Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1352 n.4 (11th Cir. 1998) ("Claims administrators are fiduciaries if they have the authority to make ultimate decisions regarding benefits eligibility.").

Moreover, Blue Cross acted within that fiduciary role when it demanded

reimbursement of medical expenses it paid for Thorn's neck-related injury, and it would act as a fiduciary if it filed a civil action for subrogation/reimbursement. *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) (citations omitted) ("[A] party is a fiduciary only 'to the extent' that it performs a fiduciary function. As such, fiduciary status under ERISA is not an 'all-or-nothing concept,' and 'a court must ask whether a person is a fiduciary with respect to the particular activity at issue.'"). Blue Cross's request for subrogation/reimbursement amounts to a discretionary decision to recoup Plan benefits Thorn received for his neck-related injury due to the alleged, alternative source of coverage for the injury. That decision falls within Blue Cross's fiduciary responsibility or authority pursuant to the Plan's language.[3] *See Sanders,* 138 F.3d at 1350-51, 1352 n.4 (ruling assertion of a subrogation interest did not divest an insurer of fiduciary status); *HCA v. Clemmons*, 162 F. Supp. 2d 1374, 1379 (M.D. Ga. 2001) (citing *Sanders*, 138 F.3d at 1352 n.5) ("Plaintiff's claim seeking partial reimbursement for proceeds paid pursuant to an ERISA-covered plan is a proper cause

[3] The court distinguishes the cases Thorn relies upon to evade this assessment. (Doc. 14, at 2-3). They concern insurers who did not constitute ERISA fiduciaries because they solely exercised ministerial functions rather than discretionary authority or control over Plan assets. *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1279 (11th Cir. 2005); *Flacche v. Sun Life Assurance Co. of Can.,* 958 F.2d 730, 733-35 (6th Cir. 1992); *Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.,* 949 F.2d 960, 965 (8th Cir. 1991); *Gallagher Corp. v. Mass. Mutual Life Ins. Co.,* 105 F.Supp.2d 889, 893-97 (N.D. Ill. 2000); *Fechter v. Conn. Gen. Life Ins. Co.,* 800 F. Supp. 182, 196-206 (E.D. Pa. 1992); *Assocs. in Adolescent Psychiatry v. Home Life Ins. Co. of N.Y.,* 729 F. Supp. 1162, 1191 (N.D. Ill.1989); *Bozeman v. Provident Nat'l Assurance Co.,* No. 90-2925-4, 1992 WL 328804, at *1-4 (W.D. Tenn. May 15, 1992)).

of action under these statutes.”).

For the foregoing reasons, Blue Cross would possess standing under ERISA to assert a coercive action for subrogation/reimbursement.

### B. Blue Cross's Displaced Coercive Action Falls Within the Scope of ERISA

Moreover, Blue Cross's displaced coercive action falls within the scope of ERISA. Thorn does not dispute Blue Cross provided him healthcare benefits pursuant to an employer-provided health plan related to his employment with Buffalo Rock. (Doc. 1-6, at 2-3, ¶ 4 (“Plaintiff received healthcare benefits through an employer-provided health plan for which Buffalo Rock Company is the plan administrator and [Blue Cross] is the claims administrator.”); Doc. 9 ¶ 5 (“Defendant [Blue Cross] paid Dr. Givhan for the treatment and for a surgery to Plaintiff's neck under a health insurance policy Plaintiff received coverage under by virtue of Plaintiff's employment with Defendant Buffalo Rock Company.”)). Thus, there exists no dispute ERISA governs the Plan. *See* 29 U.S.C. § 1002(1) (extending ERISA coverage to “any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits”); *see also Brand v. Church*, No. 6:19-CV-

00054-LSC, 2019 WL 1452891, at *4 (N.D. Ala. Apr. 2, 2019) ("Health insurance benefits, like those Brand alleges were provided by Alliance Insurance, are the type of benefits that fall within ERISA's definition of an employee welfare benefit plan.").

Further, the Plan explicitly grants Blue Cross the rights to both subrogation and reimbursement:

> **Right of Subrogation**
>
> If we pay or provide any benefits for you under this plan, we are subrogated to all rights of recovery which you have in contract, tort, or otherwise against any person or organization for the amount of benefits we have paid or provided. That means that we may use your right to recover money from that other person or organization.
>
> **Right of Reimbursement**
>
> Besides the right of subrogation, we have a separate right to be reimbursed or repaid from any money you, including your family members, recover for an injury or condition for which we have paid plan benefits. This means that you promise to repay us from any money you recover the amount we have paid or provided in plan benefits. It also means that if you recover money as a result of a claim or a lawsuit, whether by settlement or otherwise, you must repay us. And, if you are paid by any person or company besides us, including the person who injured you, that person's insurer, or your own insurer, you must repay us. In these and all other cases, you must repay us.
>
> We have the right to be reimbursed or repaid first from any money you recover, even if you are not paid for all of your claim for damages and you are not made whole for your loss. This means that you promise to repay us first even if the money you recover is for (or said to be for) a loss besides plan benefits, such as pain and suffering. It also means that you promise to repay us first even if another person or company has paid for part of your loss. And it means that you promise to repay us first even if the person who recovers the money is a minor. In these and all other cases, we still have the right to first reimbursement or repayment out of any recovery you receive from any source.

> **Right to Recovery**
>
> You agree to furnish us promptly all information which you have concerning your rights of recovery or recoveries from other persons or organizations and to fully assist and cooperate with us in protecting and obtaining our reimbursement and subrogation rights in accordance with this section.
>
> You or your attorney will notify us before filing any suit or settling any claim so as to enable us to participate in the suit or settlement to protect and enforce this plan's rights under this section. If you do notify us so that we are able to and do recover the amount of our benefit payments for you, we will share proportionately with you in any attorney's fees charged to you by your attorney for obtaining the recovery. If you do not give us that notice, or we retain our own attorney to appear in any court (including bankruptcy court), our reimbursement or subrogation recovery under this section will not be decreased by any attorney's fee for your attorney or under the common fund theory.
>
> You further agree not to allow our reimbursement and subrogation rights under this plan to be limited or harmed by any other acts or failures to act on your part. It is understood and agreed that if you do, we may suspend or terminate payment or provision of any further benefits for you under the plan.

(Doc. 1-6, at 43).

To round out the analysis, the Eleventh Circuit maintains that an insurer seeking to enforce a subrogation and/or reimbursement interest pursuant to the terms of an ERISA plan presents a claim governed by ERISA § 502(a)(3). *See Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1239 (11th Cir. 2010) ("Because full reimbursement according to the terms of the Plan's clear and unambiguous subrogation provision is necessary not only to effectuate ERISA's policy of preserving the integrity of written plans but to

protect the interests and expectations of all plan participants and beneficiaries, such relief is both 'appropriate' and 'equitable' under ERISA § 502(a)(3)."); *Sanders*, 138 F.3d at 1350, 1352-53 (declaring ERISA governed insurer's § 502(a)(3)(B)(i) claim for a declaratory judgment interpreting a health benefits plan to require reimbursement of medical expenses from a plaintiff's tort recovery, and insurer's § 502(a)(3)(B)(ii) claim for enforcement of the plan by requiring reimbursement of the medical expenses); *Travelers Companies, Inc. v. Teague*, No. 6:19-CV-514-ORL-37-TBS, 2019 WL 5188339, at *7 (M.D. Fla. July 11, 2019), *report and recommendation adopted*, No. 6:19-CV-514-ORL-78-EJK, 2020 WL 7426689 (M.D. Fla. Jan. 22, 2020) (citing *Zurich Am.*, 604 F.3d at 1236-37) ("As the plan administrator and fiduciary, Travelers has the right to bring this action against Plan participant Teague.").

Thorn contends his declaratory judgment claim falls outside the scope of the Plan because he "is not suing for ERISA plan benefits herein, but rather seeks to get Defendant [Blue Cross] out of [his] worker's compensation case." (Doc. 9 ¶ 14).[4] That

---

[4] Thorn also argues that his declaratory judgment claim does not incite the Plan's provisions because Blue Cross "has sent letters asserting a subrogation interest for neck medical treatment not sued for by Plaintiff in Plaintiff's worker's compensation case nor related to Plaintiff's employment." (Doc. 9 ¶ 16). That argument concerns the merits of Thorn's declaratory judgment claim, not whether the claim encompasses ERISA law. If a court assessing the merits of the declaratory judgment claim ultimately determines Thorn's medical treatment for injuries to his neck does not relate to his workplace injury, the court may find Blue Cross wrongly asserted a subrogation and/or reimbursement interest related to the workplace injury. Yet the question regarding which court should exercise jurisdiction over the declaratory judgment claim proceeds separately, and that question, not the merits of the declaratory judgment action, underlies the ERISA preemption analysis. *See Ervast v. Flexible Prods. Co.,* 346 F.3d 1007, 1014 (11th Cir. 2003) ("The issue of complete preemption is jurisdictional.").

argument misses the mark, as the nature of Blue Cross's displaced coercive action, which necessarily involves consideration of the Plan's terms, not the nature of Thorn's claim, undergirds federal jurisdiction by virtue of ERISA complete preemption. The Plan's explicit exclusion of expenses covered by a workers' compensation regime served as the basis for Blue Cross's request for subrogation/reimbursement. (*See* Doc. 1-6, at 48 (excluding from coverage "[s]ervices or expenses rendered for any disease, injury or condition arising out of and in the course of employment for which benefits and/or compensation is available in whole or in part under the provisions of any workers' compensation or employers' liability laws"); Doc. 1-5, at 300 ("Benefits for work-related injuries are excluded from coverage under our member's group healthcare plan."), 302 ("Blue Cross has a subrogation/reimbursement interest in this matter.")). Therefore, assessing whether Blue Cross properly asserted a subrogation/reimbursement interest will necessitate consideration of the Plan language, bringing the claim within the ambit of the Plan.[5]

Based upon the foregoing authority, Blue Cross's displaced coercive action falls

---

[5] Thorn argues the case does not require the "interpretation of any ERISA plan language, said plan language cited by Defendant BCBS herein being quite clear and unambiguous." (Doc. 14, at 2). A court may interpret ambiguous terms in an ERISA plan. *See Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1203 (11th Cir. 2020). Yet even when a plan term does not present an ambiguity, the court may assess the unambiguous plan language to determine whether a claim falls within the plan's terms. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3). Thus, the potential lack of an ambiguity in the Plan language does not place this case outside the ERISA context.

within the scope of ERISA § 502(a)(3). Because, as previously discussed, Blue Cross also would have standing to bring the displaced coercive action pursuant to ERISA, Blue Cross could have filed the displaced coercive action under § 502.

## II. No Other Legal Duty Supports Blue Cross's Displaced Coercive Action

No legal duty aside from ERISA undergirds Blue Cross's displaced coercive action. A separate legal duty arises only when the outcome of a claim does not depend upon whether the insurer possesses a duty to pay for services under the Plan. *See Gables Ins. Recovery,* 813 F.3d at 1337 ("Gables argues that its claims arise out of a separate duty independent of the ERISA plan; in other words, they do not depend on whether Florida Blue has a duty to pay for services under the ERISA plan."). As discussed, the Plan states Blue Cross sustains no duty to cover Thorn's neck-related medical expenses if those expenses arose from the same injury for which he received workers' compensation benefits. The court cannot determine Blue Cross's right to subrogation or reimbursement for the neck-related expenses without considering the language of the Plan. *See Dodson v. Aetna Life Ins. Co.*, No. 3:17-CV-343-WKW-WC, 2018 WL 1386867, at *4 (M.D. Ala. Mar. 1, 2018), *report and recommendation adopted*, No. 3:17-CV-343-WKW, 2018 WL 1384109 (M.D. Ala. Mar. 19, 2018) (no independent legal duty supported the plaintiff's claim because "the court will necessarily be required to consider and interpret the terms of the Plan"). Thus, for the same reasons the court determined Blue Cross's displaced coercive action arises under ERISA, it also

determines no other legal duty supports the displaced coercive action. *See Conn. State*, 591 F.3d at 1353 ("The second inquiry is whether Rutt's and Egan's claims are predicated on a legal duty that is independent of ERISA. Our analysis above answers this question.").[6]

Moreover, contrary to Thorn's assertion, neither the "anti-subrogation rule" nor the "suing your own insured defense" thwarts preemption. (*See* Doc. 14, at 4). First, Thorn cites *Moring v. State Farm Mut. Auto. Ins. Co.*, 426 So. 2d 810 (Ala. 1982), as supporting the "suing your own insured defense," but that case addressed subrogation rights when the same insurer insured both parties to a dispute, a situation not present here. *See id.* at 812 ("Courts in other jurisdictions have held that where both parties involved are insured by the same insurer, no right of subrogation exists against either insured.").

As to Thorn's other assertion, the Alabama Supreme Court has severely restricted the anti-subrogation rule. Alabama law now permits an insurer to "contract with its insured for subrogation to the insured's claims against a third-party tortfeasor even before the insured has been made whole." *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*,

[6] Thorn suggests he could have asserted a state claim for tortious interference with his "worker's compensation claim and/or lawsuit and/or medical care, and/or business relationship with medical providers." (Doc. 14, at 2; *see also* Doc. 9 ¶ 25 (characterizing Blue Cross's actions as "arguably tortious interference with Plaintiff's State worker's compensation case")). But, as discussed, the court must assess preemption based upon Blue Cross's displaced coercive action, not upon potential claims Thorn could have asserted but failed to assert.

772 So. 2d 1145, 1147 (Ala. 2000) (citing *Ex parte State Farm Fire & Casualty Co.,* 764 So. 2d 543, 546 (Ala. 2000)). Because the Plan at issue constitutes such a contract, no foundation exists for Thorn's argument under Alabama law.

## CONCLUSION

For the reasons stated herein, Blue Cross could have asserted its displaced coercive action for enforcement of subrogation/reimbursement rights under ERISA § 502. Blue Cross possesses standing to assert that claim under ERISA, and the claim falls within the scope of ERISA. Moreover, no other legal duty supports the claim. Accordingly, ERISA completely preempts the displaced coercive action, and this court possesses subject matter jurisdiction over Thorn's claim for declaratory judgment. Therefore, the court will **DENY** Thorn's motion to remand the entire case to state court.

However, because all parties agree this court cannot assert removal jurisdiction over Thorn's workers' compensation claim, the court will sever that claim and remand it to the state court pursuant to 28 U.S.C. § 1441(c)(2).

The court will enter a separate order accordingly.

**DONE** this 9th day of September, 2024.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE